Carlson, Appellant, *v.* Chevrolet Motor Division, General Motors Corporation, Appellant.

Argued September 14, 1962.   Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Peter P. Liebert, 3rd,* with him *John J. McDevitt, 3rd,* for appellant, defendant, General Motors, and its carrier.

*Alexander F. Barbieri,* for claimant.

*Raymond J. Porreca,* for defendant, Albert M. Greenfield & Co., Inc.

OPINION BY FLOOD, J., November 15, 1962:

In this workmen's compensation case the claimant filed claim petitions against Chevrolet Motor Division General Motors Corporation and Albert M. Greenfield & Co., Inc. seeking to determine which company was his employer for compensation purposes and the amount of compensation payable for injuries which he sustained from a falling counterweight while engaged in his occupation as a stagehand in a Chevrolet Automo-

bile show held at the Town Hall theatre, managed by Greenfield as representative of the owner. The referee found Chevrolet to be the employer, but was reversed by the board which found that Greenfield was the employer. Thereafter, on appeal the court below reversed the board and remanded the record with directions to enter an award in accordance with the finding of the referee. From this order an appeal was taken to this court by Chevrolet and its insurance carrier, Royal Indemnity Company. Thereafter, the board found Chevrolet to be the employer and entered an award against it. From the affirmance of this award by the court below, appeals were taken to this court by Chevrolet and the claimant. However, the claimant is satisfied to have Chevrolet designated as his employer for compensation purposes, and has not actively pressed his appeal. Greenfield apparently wishes to have its liability fixed as that of an employer under the Workmen's Compensation Act, so that it may avoid liability in trespass for personal injuries, and therefore argues that Chevrolet's appeals should be sustained. All of the contentions of Chevrolet, mentioned below, were also urged by Greenfield.

The facts and the reasons for the orders entered by the court below are stated as follows in the opinion of President Judge HAGAN: ". . . Claimant, a stagehand, testified that when a road show company, such as the Chevrolet road show company, set out to put on shows in various cities, it first negotiated with the International union, which determined how many stagehands were required. This information was forwarded to the Local unions in the various cities where the road show would be appearing, and the Local union would send the required number of stagehands. In this case the Chevrolet road show appeared in Philadelphia at Town Hall, and one of the stagehands sent by the union was the claimant. He testified categorically that the only

person he took instructions from with respect to the manner in which his work was to be performed was an employee of the Chevrolet road show company.

"The evidence in defendants' case, rather than leading to a conclusion that Greenfield was the employer, reinforces the conclusion which stems from claimant's testimony, that claimant's employer was Chevrolet. Thus, a Mr. Weisberg testified that he is employed by one of the Greenfield companies as manager of Town Hall, and that the claimant was sent to Town Hall by the union at the request of a Mr. Foster, stage manager and union steward of Town Hall. When he was asked what the claimant's duties were supposed to be, he answered, 'That's not up to me.' Mr. Weisberg further testified that the International union determines how many men are required for a road show, and the Local union sends them there. He stated that Town Hall, for which Greenfield is the rental agent and which is also owned by one of the Greenfield companies, has nothing to say about how many men are sent but merely pays their salaries. He further stated that, as manager of Town Hall, he takes no part in the preparation, setting up or functioning of the road show; that Town Hall did nothing but provide the space. Mr. Weisberg also testified that the stagehands do not take orders from Foster and that Foster does not have authority to give them orders; that what Foster does is keep time records for the stagehands, which, in turn are approved by the road show company and, based upon these, the wages are paid by Greenfield as agent for Town Hall. He stated that Foster, in keeping time records and seeing that the men are paid, acted not as a Greenfield employee, but in his capacity as union steward; and that Foster's only supervisory capacity is as a union steward.

"Another witness for the defendants was a Mr. Mc-Manus, Assistant Treasurer of Albert M. Greenfield &

Co., Inc. He testified that Greenfield leased Town Hall to the road show company, and as part of the lease agreement agreed to handle the payroll for the road show with respect to those employees supplied by the Local union. He testified that the employees are paid 'from the rent account of the Town Hall Building' . . .

"On the basis of the foregoing testimony, the Board made a finding of fact that the claimant was under the active supervision and control of Albert M. Greenfield & Co., Inc. There is clearly no evidence to support this finding of fact and the conclusion of law which flows therefrom, namely, that the claimant was Greenfield's employee. From all of the evidence in the record, and particularly from the evidence in defendants' case, there is only one conclusion which can be reached, namely, that the actual supervision and control of claimant with respect to the manner of performance of his work was by the Chevrolet road show company, and that all that Greenfield did was to pay claimant. It is further clear that in paying claimant Greenfield did so only as a service to the road show company, which, in fact, actually bore the expense of claimant's salary as part of the rent it paid for Town Hall."

In support of its contention that the court below should not have disturbed the original award because there was competent evidence to support the board's finding that the claimant was employed by Greenfield, Chevrolet relies upon the evidence which indicates that the union sent the claimant to the premises at the request of Foster, who was Town Hall's stage manager, that the claimant's time was kept by Foster, that the Greenfield office arranged for payment of the claimant's wages after deductions were made for social security, unemployment compensation, payroll taxes, etc. and that his wages were paid through Foster. For the reasons set forth in President Judge HAGAN's opinion this evidence clearly was insufficient to support the

board's original finding that Greenfield was the employer.

The contention that Foster, the Town Hall stage manager, was "in charge" of the claimant and had a "right to fire him" if his work was not satisfactory cannot be sustained under the evidence. Chevrolet relies upon certain testimony of Mr. Weisberg, taken out of context, as follows:

"Q. But he's in charge of these stagehands as far as your office is concerned in Town Hall and as such he is your employee, is he? A. That's right. Q. If one stagehand is not satisfactory does he have a right to fire him or to take any other action? A. Yes, he does."

However, this excerpt, consisting of affirmative answers to two leading questions asked by Chevrolet's counsel, must be read in connection with the balance of Weisberg's testimony. He had previously testified in answer to questions by Chevrolet's counsel:

"Q. Well, do the stagehands take orders from Foster when he's in your employ as a stage manager? A. Not necessarily, no. Q. I mean do they? A. No. Q. You mean Foster has no authority to give orders to the stagehands that are working under him? A. No. Q. Why is he the supervisor? A. Well, he's in charge of the stagehands that come to Town Hall."

Afterward, on cross-examination by plaintiff's counsel he testified:

"Q. So that when you refer to Foster having something to do with the men let's say in the supervisory capacity it refers to his capacity as union steward and timekeeper for men in this area, isn't that true? A. That's right. Q. Aside from that the functioning of a show is something over which Foster has no control, is that correct? A. Yes. . . . Q. . . . Can Foster fire a man? A. Well, if you're going to get real technical now with me on that issue—Q. I'm not trying to. A. It all depends what we're involved in; if its just a minor

thing he might just have to notify the business agent to come down and he takes the steps of firing him. It all depends what it is. He might do something very bad. Who knows? I really don't know. But he has a right to do it. Whether he does it or not this is something else . . . Q. How about a man like Carlson? Suppose the road show expressed dissatisfaction with Carlson and wanted him to be removed or replaced, how would that be done? A. I believe he would have to get in touch with the local business agent."

A fair reading of Mr. Weisberg's testimony as a whole does not support the contention of Chevrolet and Greenfield. On the contrary, it confirms all of the other evidence in the record which indicates that Weisberg, as Greenfield's manager of Town Hall, had no control over Carlson, and that Foster, Greenfield's stage manager, had little or no actual supervisory power or control over him and that such power or control as he had came from his position as union steward rather than as Greenfield's stage manager.

Where, as here, the facts are not in dispute and the evidence leaves no sufficient ground for inconsistent inferences from them, it is for the court to determine who is the workman's employer. *Mature v. Angelo*, 373 Pa. 593, 97 A. 2d 59 (1953). In our opinion there was no competent evidence to support the board's original finding, and the court below properly reversed the first award against Greenfield and properly affirmed the second award against Chevrolet.

Order affirmed.